DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Appellant, Justin Williams, appeals from the decision of the Medina County Court of Common Pleas, which convicted him of menacing by stalking, escape, and trespass, and sentenced him accordingly. We affirm.
 I. {¶ 2} On June 11, 2002, Appellant was indicted on one count of menacing by stalking, in violation of R.C. 2903.211(A)(B)(2)(c), one count of burglary in violation of R.C. 2911.12(A)(3), one count of burglary, in violation of R.C. 2911.12(A)(2), and one count of escape, in violation of R.C. 2921.34(A). The indictment was subsequently amended and one count of burglary was dismissed. Appellant entered a plea of not guilty to the charges, and the matter proceeded to jury trial, commencing on October 8, 2002. The jury returned a verdict of guilty on the escape and menacing by stalking charges, as well as trespass, a lesser included offense. Appellant was sentenced to a term of incarceration of fourteen months on the charge of menacing by stalking, six months on the charge of escape, and thirty days on the charge of trespass. The court ordered the sentences to be served concurrently. This appeal followed.
 II. First Assignment of Error
"The evidence at trial was insufficient to support appellant's conviction of menacing by stalking in violation of O.R.C. Section 2903.211, and his conviction of that offense was against the manifest weight of the evidence."
 {¶ 3} In his first assignment of error, Appellant asserts that his conviction for menacing by stalking was based upon insufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 4} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 5} Appellant first argues that his conviction for menacing by stalking was based upon insufficient evidence. To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 6} After a review of the record, we find that Appellant waived any objection under Crim.R. 29 to the sufficiency of the evidence. In order to preserve the denial of a Crim.R. 29(A) motion for appellate review, a defendant who is tried before a jury and brings such a motion at the close of the state's case must renew the motion for acquittal at the close of all evidence, provided that the defendant puts on a defense. State v. Miley (1996), 114 Ohio App.3d 738, 742. In this case, Appellant made a Crim.R. 29 motion at the close of the state's evidence, which the trial court denied. However, Appellant failed to renew his motion for acquittal after he presented his defense. Accordingly, we decline to address the portion of Appellant's argument relating to the insufficiency of the evidence.
 {¶ 7} We now turn to Appellant's argument that his conviction for menacing by stalking was against the manifest weight of the evidence. When a defendant asserts that his conviction is against the manifest weight of the evidence,
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
 {¶ 9} R.C. 2903.211 provides, in pertinent part:
"(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
"* * *
"(B) Whoever violates this section is guilty of menacing by stalking.
"* * *
"(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:
"* * *
"(c) In committing the offense [under (A0(1) or (2)], the offender trespassed on the land or premises where the victim lives, is employed, or attends school."
 {¶ 10} Appellant argues that the state failed to establish a pattern of conduct and failed to establish that Appellant knowingly caused the victim to believe that he would cause her physical harm or mental distress. Appellant essentially argues that Appellant cannot be convicted for this offense because the victim initiated contact with Appellant during the relevant time frame.
 {¶ 11} "`Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C.2903.211(D)(1). "`Mental distress' means any of the following: (a) Any mental illness or condition that involves some temporary substantial incapacity; (b) Any mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211(D)(2).
 {¶ 12} The evidence revealed the following: Appellant and the victim, Melanie Skoczen, dated on and off from November, 2000, until April, 2002. Melanie testified that on April 19, 2002, she and Appellant went to a party and got into an argument. She testified that after the couple left the party, Appellant burned her with a cigarette and hit her and pushed her head against the window while she was driving. She stopped the car and told Appellant to get out. Thereafter, Melanie returned to the party to pick up her friend, Stephanie, and the two girls left. Melanie stated that Appellant called her on her cellular phone, that he was crying, and that Melanie and Stephanie went to pick him up. Melanie and Stephanie both testified that when the girls arrived to pick Appellant up, Appellant looked angry. When Melanie attempted to turn the car around to leave, Appellant ran toward the car and held onto the car's window. Melanie stated that she was upset and scared, and was shaking and crying. Melanie stopped the car; Appellant pulled Stephanie out of the front seat and told her to get in the back, and Appellant sat in the front seat of the car. Melanie took Stephanie back to the party, and she and Appellant headed toward home.
 {¶ 13} Melanie testified that along the way back home, Appellant repeatedly told her that she was "going to get it" and continued to push her head against the window. Melanie stated that she drove fast, hoping to get pulled over, but when Appellant told her to not drive so fast and that she had better not get pulled over, she slowed down because "[she] didn't want him to hurt [her]." Melanie stopped at a park in Brunswick when Appellant suggested that she should not go home "looking like that" and that she should "chill out." Melanie testified that her cellular phone kept ringing, and Appellant would not let her answer it; he took the phone from her and threw it at her head. Appellant eventually got out of the car, and Melanie drove home, where she told her mother, Elizabeth Skoczen, what had happened. Mrs. Skoczen testified that when Melanie returned home late that evening, she was hysterical and crying. At that point, Mrs. Skoczen called the police.
 {¶ 14} Officer Clifford Smith of the Brunswick Police Department testified that he responded to Mrs. Skoczen's report on the late evening of April 19 or early morning of April 20. Officer Smith stated that Melanie was upset and crying, and was "near hysterical." He testified that she was yelling, screaming, and crying. Melanie told him that she and Appellant had fought and Appellant had burned her arm with a cigarette. Officer Smith also spoke with Appellant. Officer Smith testified that Appellant admitted that he burned Melanie with a cigarette; Appellant stated that the first time was an accident, but when Melanie started to flip out, Appellant asked her if she wanted him to do it again, and Appellant pressed his cigarette up against Melanie's arm.
 {¶ 15} Mrs. Skoczen testified that she told Appellant the next day that he was not welcome at the Skoczen's house. Mr. and Mrs. Skoczen told Melanie that they did not want her to see Appellant any longer. Melanie testified that her father and her brothers also informed Appellant that he was not welcome on their property.
 {¶ 16} A few days later, Melanie discovered that she was pregnant. On April 25, Melanie heard a knock on her bedroom window. She told her parents, and Melanie's father and brother went outside to find Appellant in the yard. Mrs. Skoczen testified that she also saw Appellant in the yard, walking away from Melanie's window. Melanie's brother and Appellant fought, and the police were called.
 {¶ 17} Melanie testified that she told Appellant that they should not see each other for a month and that Appellant should take anger classes. She began to receive three or four telephone calls per day and messages on her answering machine from Appellant. Michael Skoczen, Melanie's brother, testified that Appellant called the house approximately fifteen to twenty times a day. Melanie testified that Appellant telephoned her on May 4, 2002, and told her he was sorry. She picked Appellant up in her car so the two could talk. While they were driving, they got into an argument and Appellant got violent. Melanie proceeded to drop him off in Hinckley and went to see her friend, Amanda. As Melanie was leaving Amanda's house, she discovered that Appellant was in a car that was parked behind her car in the driveway. Appellant got out of the car, and Amanda told him repeatedly to leave. Amanda's step-father came outside and fought with Appellant. Melanie testified that she called her mother, who then called the police. Mrs. Skoczen testified that when Melanie called her, "[Melanie] was petrified, and she said that [Appellant] was going to kill her."
 {¶ 18} Melanie further testified that on May 23, she telephoned Appellant and told him that she did not want him to accompany her to a doctor's appointment. Later, Appellant rode his bicycle past Melanie's house, went onto the property, and yelled at her brother and her brother's friend. Michael Skoczen testified that Appellant yelled to Michael that he would "kick [his] ass." When Michael told Appellant that he would call the police, Appellant stated, "if I go to jail, I am going to kill your [f * * * ing] sister."
 {¶ 19} Melanie also testified that on May 30, 2002, Appellant showed up at her school during second period. Alaina Makepeace, Melanie's teacher also testified that she observed Appellant at the school during this time. Ms. Makepeace testified that she asked Appellant if he was a student at the school. When Melanie stated that he was not, Ms. Makepeace told Appellant to leave, that he was trespassing. Ms. Makepeace testified that, at that point, Appellant screamed "you [f * * * ing] bitch, you called the [f * * * ing] cops" and Appellant became verbally abusive to both Melanie and Ms. Makepeace. Melanie found the school's liason officer, Officer Schuster, and reported the incident. Officer Schuster testified that when Melanie told him what had happened, she was upset, angry, and appeared to be afraid. Mrs. Skoczen testified that Officer Schuster called her and asked her to come to the school. She stated that when she arrived, Melanie was petrified. Mrs. Skoczen testified that, in her opinion, Melanie was definitely afraid of Appellant.
 {¶ 20} Melanie admitted on cross-examination that she wrote letters to Appellant, specifically on April 24 and May 13, in which she stated that she loved him. In one of these letters, Melanie indicated that she did not like hiding their relationship from her parents. She also testified that throughout April and May, she had contact with Appellant, explaining that "[she] felt as if [she] didn't do what he wanted [her] to do, that he would make a bigger scene, and [she] didn't want that to happen."
 {¶ 21} Four witnesses testified for the defense. Patricia Bramonte testified that sometime between May 23 and June 3, 2002, she saw Appellant at Brunswick High School. Bramonte could not remember the exact date, but she testified that it was sometime around fourth period. Bramonte stated that on this particular day, Appellant and Melanie talked, but Bramonte could not hear their conversation. Bramonte did not see either Melanie or Appellant act as if they were angry. Bramonte also stated that during this time, she did not observe any teacher approach Melanie and Appellant.
 {¶ 22} Patricia Young testified that she observed Appellant with Melanie on various occasions from April 19 until May 30, 2002. Appellant performs chores for Young. Young testified that she saw the two together on May 4, May 17, and May 29, 2002. Barbara Cognata, with whom Appellant lives, testified that Melanie called Appellant approximately five to seven times between April 19 and May 30, 2002. Cognata testified that on May 28, 2002, Mrs. Skoczen and Melanie came to her house to pick up some baby clothes. On this date, Appellant and Melanie were together at the house and neither Appellant nor Melanie got angry with the other.
 {¶ 23} Wendy Dobson also testified for the defense. She stated that she and her boyfriend picked up Appellant on May 4 and drove him past Melanie's house. They saw Melanie's car at Amanda's house, and Appellant asked them to stop. Dobson testified that Amanda's mother came out of the house and Appellant asked if he could speak to Melanie. Amanda's step-father came out of the house, and he and Appellant scuffled. Dobson stated that she did not observe Appellant scream at Melanie. On cross-examination, Dobson admitted that in her statement to the police, she stated that she tried to break up the fight between Appellant and Amanda's step-father and that when they were told to get off of the property, Appellant refused to get in the car. Dobson also testified that she saw Appellant and Melanie together at the mall approximately one week later.
 {¶ 24} After a review of the evidence, we cannot say that the jury lost its way and created a miscarriage of justice when it convicted Appellant of menacing by stalking. The fact that the victim may have initiated some contacts throughout the relevant time period does not change this analysis. R.C. 2903.211 does not require that the victim avoid the accused altogether; however, the statute does require a belief on the part of the alleged victim that the accused will cause physical harm or mental distress to him or her. See R.C. 2903.211. Explicit threats are not necessary, but the State must prove that the defendant knowingly caused the belief in the victim. See State v. Smith (1998),126 Ohio App.3d 193, 200. Given the testimony, this is not a case where the evidence weighs heavily in favor of Appellant, meriting a new trial. Accordingly, Appellant's conviction for menacing by stalking was not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 Second Assignment of Error
"The trial court erred in sentencing the eighteen year-old appellant, who had never previously served a prison term, to more than the shortest prison term authorized by law."
 {¶ 25} In his second assignment of error, Appellant asserts that the trial court erred when it did not sentence him to the minimum sentence authorized by R.C. 2929.14(B) for his menacing by stalking conviction, a fourth degree felony, because he has not previously served a prison sentence. Appellant further argues that the trial court did not properly consider the seriousness and recidivism factors of R.C. 2929.12
and that the record does not support the trial court's conclusion that the shortest prison term would demean the seriousness of the offense or would not adequately protect the public from future crime. Appellant's arguments are without merit.
 {¶ 26} Appellant first asserts that the trial court did not properly consider the seriousness and recidivism factors of R.C. 2929.12. He argues that "[n]one of the factors making [Appellant's] conduct more serious than that normally constituting the offense were present, whereas several factors making [Appellant's] conduct less serious did apply." The trial court relied upon the record, oral statements, and a presentence investigation during sentencing. During the sentencing hearing, the trial court stated that the presentence investigation indicated that there were no "less serious" factors present and there were two "more serious" factors present. It also indicated that Appellant has shown genuine remorse for his actions regarding the escape and trespass convictions; however, he had not taken responsibility for nor displayed remorse for the menacing by stalking. We note that the presentence investigation is not a part of the record before this Court. Accordingly, we must presume that the presentence investigation supports the trial court's findings. See, e.g. State v. McCowan, 9th Dist. No. 02CA008124, 2003-Ohio-1797, ¶ 10.
 {¶ 27} Moreover, the trial court stated, both during the sentencing hearing and in the judgment entry, that the court considered and balanced the factors under R.C. 2929.12, and found that prison is consistent with the purposes of R.C. 2929.11 and that Appellant was not amenable to an available community control sanction. The Ohio Supreme Court has explained the trial court's duty under R.C. 2929.12: "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors."State v. Arnett (2000), 88 Ohio St.3d 208, 215.
 {¶ 28} Appellant also argues that the record does not support the trial court's conclusion that the shortest prison term would demean the seriousness of the offense or would not adequately protect the public from future crime in order to impose a sentence that is more than the minimum authorized for an offender who has not previously served a prison term.
 {¶ 29} R.C. 2929.14(A)(4) provides that for a fourth degree felony, the court may impose a prison sentence of six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(B) provides that if the court imposes a prison term, the prison term imposed shall be the shortest prison term authorized unless (1) the offender was serving a prison term at the time of the offense, or the offender previously had served a prison term, or (2) the court finds on the record that the shortest term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. When a court imposes a prison term greater than the minimum, it need not specify its underlying reasons on the record. State v. Edmonson
(1999), 86 Ohio St.3d 324, syllabus. Rather, it is sufficient that the record reflects that the court engaged in the statutory analysis and found either or both of the R.C. 2929.14(B) exceptions warranted a sentence greater than the minimum. Id. at 326.
 {¶ 30} Although the trial court was not required to state its reasons on the record, it noted during the sentencing hearing that Appellant had a prior juvenile delinquency record of "trafficking in marijuana, obstructing official business, disorderly conduct, receiving stolen property, and operation without a valid driver's license." It was also noted that during the pendency of this case, Appellant was sentenced to jail for obstructing official business and resisting arrest. The court further noted that the presentence investigation indicated that Appellant did not take responsibility for his actions, nor did he display any remorse for his actions with regard to the menacing by stalking.
 {¶ 31} Thus, after a review of the record in this case, we find that the trial court considered the relevant factors under R.C. 2929.14
and did not err when it sentenced Appellant to a term greater than the minimum authorized for his conviction of menacing by stalking. Appellant's second assignment of error is overruled.
 III. {¶ 32} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
CARR, J. and WHITMORE, J. concur.